IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
TAMMY GADDY,                      )
                                  )
           Plaintiff,             )
                                  )
     v.                           )      23-CV-938
                                  )
UNIVERSITY OF NORTH CAROLINA      )
HEALTH CARE SYSTEM,               )
                                  )
           Defendant.             )
```

### MEMORANDUM OPINION AND ORDER

Plaintiff Tammy Gaddy, a former employee of Defendant University of North Carolina Health Care System ("UNC Health"), alleges employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Before the court are UNC Health's motion to dismiss the complaint (Doc. 8), and Gaddy's motion for leave to file an amended complaint (Doc. 12). For the reasons set forth below, Gaddy's motion for leave to file an amended complaint will be granted, and Defendant's motion to dismiss will be denied.

### I. BACKGROUND

The facts are based on the well-pleaded allegations of the complaints, which are accepted as true for purposes of the pending motions and viewed in the light most favorable to Gaddy.

Gaddy is an African American female. (Doc. 1 ¶ 5.) She was employed as a Patient Accounts Manager for the Financial Counseling

team at UNC Health from January 2, 2008, until April 26, 2022. (Id. ¶¶ 5-6.) Throughout her employment with UNC Health, Gaddy was consistently evaluated as exceeding expectations in her annual performance reviews. (Id. ¶ 7.)

On April 8, 2022, Gaddy attended an ice cream social with her co-workers and made a joke about "who had the better team." (Id. ¶ 9.) No one at the event expressed any offense by the joke. (Id. ¶ 10). On April 11, 2022, Gaddy was contacted by Jennifer Headen[1] at UNC Health, who told her not to report to work the following day. (Id. ¶ 11.) Gaddy discovered that access to her work account had been blocked and that her supervisors had been contacted by Headen about "writ[ing] statements against her." (Id. ¶¶ 13-14.) On April 12, Gaddy was notified that she was placed on investigatory paid leave so that UNC Health could investigate a complaint made against her for her conduct during the ice cream social. (Id. ¶ 15.) Later that week, Gaddy attended a phone conference where Headen explained that Gaddy's actions "were not aligned with [the] 'One Great Team'" philosophy. (Id. ¶¶ 17-19.) Headen requested that Gaddy respond to the allegations in writing, and Gaddy did so, explaining that "she did not recall making any comments that would warrant [being placed] on investigatory

---

[1] Gaddy's original complaint refers to "Jennifer Header." (Doc. 1 ¶ 11.) UNC Health's briefing explains that the individual is understood to be "Jennifer Headen." (Doc. 9 at 6 n.1.) Because Gaddy's response brief adopts this name (Doc. 11 at 8), the court will, too.

2

leave." (Id. ¶¶ 20-27.) Gaddy also noted in her response that after her joke at the social event, she had stated, "[A]ll jokes aside, we are one great team. Regardless of who you report to, we are all here to help you." (Id. ¶ 28.)

On April 26, 2022, Headen told Gaddy that she was being terminated immediately "without cause." (Id. ¶ 29.) Gaddy asked Headen if she had considered the investigation into the social event in making her decision to terminate Gaddy, and Headen indicated that she had. (Id. ¶ 30.) Headen did not allow Gaddy to see a copy of the documentation from the investigation. (Id. ¶ 31.)

Gaddy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which dismissed the charge and issued a right to sue notice on August 1, 2023. (Id. at 9.) Gaddy filed her complaint alleging discrimination under Title VII on October 31, 2023.

Gaddy alleges disparate treatment on the basis of race and alleges four comparators. The first is an employee who "was hired with the job posting [requiring him] to be certified within six (6) months of hire or be terminated." (Id. ¶ 35.) This employee did not get certified yet kept his job. (Id.) In her proposed amended complaint, she adds that this employee is white. (Doc. 12-1 ¶ 38.) The second comparator is a white female employee at UNC Health, who was accused of racial discrimination by an African

3

American employee. (Doc. 1 ¶ 36.) The white employee was promoted to Associate Vice President after this complaint was lodged. (Id. ¶ 37.) In her proposed amended complaint, Gaddy adds that this employee was later promoted to Vice President of Operations. (Doc. 12-1 ¶ 42.) The third comparator is a white female employee, who was accused of poisoning other employees and was not terminated. (Doc. 1 ¶ 38.) In Gaddy's proposed amended complaint, she changes this allegation, explaining that the third comparator is a Human Resources Consultant who made "racist comments about lynchings, immigrants, and poisoning" rather than being accused of poisoning other employees. (Doc. 12-1 ¶ 43.) Gaddy alleges that UNC Health determined that this employee had, in fact, made such comments but did not discipline or terminate her. (Id. ¶¶ 44, 47.) The final comparator is a white female employee who made offensive remarks regarding individuals who are LGBTQ and African American. (Doc. 1 ¶ 39.) This employee was neither disciplined nor terminated. (Id. ¶ 40.) The proposed amended complaint adds that this employee worked in the Financial Navigation Department and reported to Jennifer Headen and that her offensive comments were reported to Headen. (Doc. 12-1 ¶¶ 48-51.)

UNC Health responded to the complaint with a motion to dismiss for insufficiency of service and failure to state a claim upon which relief can be granted. (Doc. 8.) Gaddy responded in opposition (Doc. 11) and moved for leave to file an amended

4

complaint (Doc. 12), attaching her proposed amended pleading (Doc. 12-1).  UNC Health filed a reply as to its motion to dismiss (Doc. 14) and an opposition to Gaddy's motion for leave to file an amended complaint (Doc. 15).

In her proposed amended complaint, Gaddy supplements and modifies certain factual allegations, particularly with respect to the four comparators, as explained above.  (Doc. 12-1 ¶¶ 38-52.)  She also explains Jennifer Headen's position at UNC Health (id. ¶ 11) and adds a state law claim for wrongful termination in violation of North Carolina public policy (id. at 8-9).

## II. ANALYSIS

### A. Service of Process

#### 1. Service Directed to Process Agent

UNC Health first argues that Gaddy's complaint should be dismissed for insufficient service of process because the summons was not directed to UNC Health's agent for service of process.  UNC Health contends that under Rule 4 of the Federal Rules of Civil Procedure, Gaddy was required to serve its appointed process agent, Thomas Shanahan.  (Doc. 9 at 9-10.)  Instead, the summons was directed to B. Glenn George.  (Id. at 10.)  UNC Health argues that this is "not a minor technical defect, but a fatal error" and that "[t]his [c]ourt has repeatedly found service deficient where the summons and complaint were not properly served on the agency's designated process agent."  (Id.)

5

Gaddy responds that she was unaware that B. Glenn George, who was formerly the registered agent for UNC Health, had retired and been replaced by Thomas Shanahan. (Doc. 11 at 5.) Gaddy contends that while she technically violated the rules for service, UNC Health received actual notice and so "the rules for service should be given 'a liberal construction.'" (Id. (quoting Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984)).)

UNC Health is a state agency. Singh v. Univ. of N. Carolina at Chapel Hill, 659 F. Supp. 3d 659, 669-72 (M.D.N.C. 2023). Under the Federal Rules of Civil Procedure, there are two ways to serve process on a state agency: (1) "delivering a copy of the summons and of the complaint to its chief executive officer" or (2) "serving a copy of each in the manner prescribed by the state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). North Carolina law instructs that an agency of the state must be served by directing the summons and complaint to its process agent. N.C.R. Civ. P. 4(j)(4) (providing that service of process must be effected "by personally delivering a copy of the summons and of the complaint to the process agent," "by mailing a copy of the summons and of the complaint . . . addressed to said process agent," or "by depositing with a designated delivery service . . . a copy of the summons and complaint[] addressed to the process agent"). When service is

6

ineffective, "the [c]ourt has discretion to dismiss the action or to quash service and allow the plaintiff more time to serve process." Walston v. Cintron, No. 1:18-CV-517, 2018 WL 6624198, at *2 (M.D.N.C. Dec. 18, 2018) (citing Thomas v. Nelms, No. 1:09-CV-491, 2013 WL 593419, at *1 (M.D.N.C. Feb. 14, 2013) (collecting cases)). In exercising their discretion, courts have considered whether the defendant received actual notice or was prejudiced by the defect in service. See McCreary v. Vaughan-Basset Furniture Co., 412 F. Supp. 2d 535, 537-39 (M.D.N.C. 2005) (denying motion to dismiss for insufficient service of process because defendant corporation had actual notice, even though plaintiff directed U.S. Marshal Service to serve complaint and summons at defendant's physical address but service was made on its post office box and no registered agent was identified).

It is undisputed that Gaddy did not properly serve UNC Health's process agent, but rather served UNC Health at its address "c/o" B. Glenn George, its prior chief legal officer who was the process agent. If the court were to dismiss this action, Gaddy would be unable to pursue her claim, as the statute of limitations has expired. See 42 U.S.C. § 2000e-5(f) (requiring plaintiffs to file a complaint within ninety days of receiving a right-to-sue letter from the EEOC); (Doc. 1 at 9) (showing the right-to-sue letter was issued on August 1, 2023, and the complaint was filed ninety days later on October 31, 2023). Furthermore, UNC Health

7

received actual notice of this action (which is not surprising as UNC Health apparently recognized the materials to be intended for the chief legal counsel who also serves as its process agent) and would not be prejudiced by quashing service. See McCreary, 412 F. Supp. 2d at 537, 539. Therefore, the court declines to quash service and dismiss the complaint based on insufficiency of service.

### 2. Timeliness

UNC next argues that service of process was untimely. Under Federal Rule of Civil procedure 4(m), the defendant must be "served within 90 days after the complaint is filed." However, "if the plaintiff shows good cause for the failure [to serve the defendant within that time], the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). UNC Health contends that Gaddy served process more than ninety days after filing the complaint, pointing out that she only requested a summons after the court notified her of her failure to serve process within ninety days. (Doc. 9 at 12.) UNC Health also argues that Gaddy cannot show good cause. (Id.) It asserts that neither inadvertence nor counsel's personal health problems amounts to good cause. (Doc. 14 at 8.) UNC Health also argues that if Gaddy's counsel was unable to personally ensure process was served during the ninety-day window due to a medical issue, he could have had another attorney at his firm take responsibility for doing so.

8

(Id. at 9.) In fact, UNC Health argues, Gaddy's counsel did just this in another case, Banks v. Alamance-Burlington Board of Education, pending before this court during the ninety-day window in this case. (Id.)

Gaddy responds that service was timely because the summons was issued within the time set by the court in its Federal Rule of Civil Procedure 4(m) notice (Doc. 2) and that if not, she can show good cause. (Doc. 11 at 2.) Gaddy acknowledges that process must be served within ninety days of filing the complaint but explains that under Rule 4, if the plaintiff fails to do so, the court has the option to dismiss the action or provide that service must be effected within a specified time. (Id.) She argues that she served process before the court "issu[ed] an [o]rder for service to be effectuated within a specified period of time," effectively mooting the issue. (Id.) She also suggests that service was timely because when the court issued the notice regarding her failure to serve UNC Health within the ninety-day period (Doc. 2), it gave her fourteen days to respond to the notice, and she issued the summons within those fourteen days. (Doc. 11 at 2.) Gaddy continues that if service was untimely, her counsel's medical issues during the ninety-day window constitute good cause.[2] (Id.

---

[2] Gaddy's counsel was diagnosed with serious heart issues in mid-November 2023. (Id. at 2.) After further testing, counsel underwent quadruple bypass surgery on December 18, 2023, and was released from the hospital several days later. (Id. at 3.)

9

at 2-5.) Gaddy further argues that the delay in service was minor, only twenty-six days, and did not prejudice UNC Health. (Id. at 4-5.) Finally, she argues that dismissing this action would "create a statute of limitations issue." (Id. at 5.)

Rule 4(m) provides that if a defendant is not served within ninety days of the filing of the complaint, the court on motion or on its own after providing notice to the plaintiff "must dismiss the action without prejudice against the defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, if the plaintiff can show good cause for the failure, "the court must extend the time for service for an appropriate period." Id. "Generally, for purposes of Rule 4(m), 'good cause' requires some showing of diligence on the part of the plaintiffs." Attkisson v. Holder, 925 F.3d 606, 627 (4th Cir. 2019), as amended (June 10, 2019). If the plaintiff cannot show good cause, the court has the discretion to extend time to serve the defendant. See Gelin v. Shuman, 35 F.4th 212, 219-20 (4th Cir. 2022) ("[A] district court possesses discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and summons even absent a showing of good cause . . . ."). "The plaintiff bears the burden of establishing that service of process has been accomplished in a manner that complies with Rule 4." Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 526 (M.D.N.C. 1996).

10

Gaddy's response demonstrates a misunderstanding of Rule 4. The deadline for service of the summons and complaint is ninety days from the filing of the complaint; it is not any time before the court "issu[es] an [o]rder for service to be effectuated within a specified period of time." (See Doc. 11 at 2.) And the court's notice to counsel that the ninety-day period has passed (see Doc. 2) is not an extension. Here, Gaddy filed her complaint on October 31, 2023 (Doc. 1), and thus had until January 29, 2024, to serve UNC Health. The parties agree that Gaddy does not claim to have served UNC Health until after this date.[3]

Gaddy's counsel's medical condition during the ninety-day window for service in this case was undoubtedly serious. However, courts often find that the medical condition of plaintiff's counsel, even when serious, is insufficient to show good cause. See, e.g., Chihota v. Fulton, Friedman & Gullace, LLP, No. RDB-11-01273, 2012 WL 1319816, at *3 (D. Md. Apr. 16, 2012) (finding that good cause was not shown when counsel had had a medical procedure performed on both eyes); Knott v. Atlantic Bingo Supply, Inc., No. JFM-05-1747, 2005 WL 3593743, at *1-2 (D. Md. Dec. 22, 2005) (finding that good cause was not shown despite counsel being incapacitated by sarcoidosis in part because other attorneys at

---

[3] A summons was not issued until February 22, 2024. (Doc 4.) Gaddy contends that process was served on February 26, 2024. (Doc. 11 at 5.) UNC Health asserts that it received a copy of the summons and complaint by certified mail on or about March 5, 2024. (Doc. 9 at 6.)

11

counsel's firm "could have taken over responsibility for seeing process served"). Nevertheless, the court retains the discretion to extend the time for Gaddy to serve UNC Health in this case.

As a practical matter, if the court were to quash service and dismiss the action, Gaddy would be time-barred in bringing her claim, the delay of which is attributable to counsel. Cf. Harris v. S. Charlotte Pre-Owned Auto Warehouse, LLC, No. 3:14-CV-00307-MOC-DCK, 2015 WL 1893839, at *5-6 (W.D.N.C. Apr. 27, 2015) (reopening and enlarging the time for service because mistakes that led to a failure to serve process were "clearly attributable to [plaintiff's] attorney" despite not finding good cause). Alternatively, if the court were to "order that service be made within a specified time" under Rule 4(m), it would be a largely pointless act as UNC Health concedes it received actual notice. Where, as here, the defect in service involved naming the proper Defendant but designating the predecessor chief legal counsel (who was the process agent) as process agent, the court will exercise its discretion under Rule 4(m) and extend the time for serving the summons and complaint to the date UNC Health concedes it was served by certified mail in this case. The motion to quash service will therefore be denied.

B.  **Amended Complaint**

Gaddy has moved for leave to file an amended complaint (Doc. 12). The proposed amended complaint supplements and modifies some

12

of the factual allegations in the original complaint and adds a state claim for wrongful termination. (Doc. 12-1.) Gaddy argues that granting her leave to file her amended complaint would neither cause undue delay nor cause UNC Health to suffer any prejudice. (Doc. 12 ¶¶ 6,7.)

In response, UNC Health argues that Gaddy's amended complaint would be futile. It contends that her proposed factual amendments still fail to allege sufficiently similar comparators to survive a motion to dismiss her Title VII claim. (Doc. 15 at 12-18.) UNC Health also argues that Gaddy's claim for wrongful termination is barred by sovereign immunity. (Id. at 8-9.)

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend the complaint once as a matter of course within twenty-one days after the earlier of (1) service of a responsive pleading or (2) service of a motion under Rule 12(b), (e), or (f). After that period, a party may amend only with either the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court therefore has the discretion to entertain the pending motion to dismiss, or to consider the motion to amend and then permit the parties to re-brief the motion to dismiss. Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that "the grant or denial of an opportunity to amend is within the discretion of the District Court"). And while district courts have discretion to grant or deny a motion to amend, the Fourth Circuit has interpreted

13

Rule 15(a) to provide that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (citation omitted); see Foman, 371 U.S. at 182 (same).

"[I]f the proposed change advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 225 (8th Cir. 1994) (citing Charles A. Wright & Arthur Miller, Fed. Prac. & Proc.: Civil, § 1487, at 637 (1991) (quotation omitted and alterations adopted)); see Joyner v. Abbott Labs, 674 F. Supp. 185, 190 (E.D.N.C. 1987) (same). In determining whether a proposed amended complaint would be futile, the court reviews the proposed complaint under the standard used to evaluate a motion to dismiss for failure to state a claim. Amaya v. DGS Constr., LLC, 326 F.R.D. 439, 451 (D. Md. 2018) (citing Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011)). Thus, "[a] motion to amend a complaint is futile 'if the proposed claim would not survive a motion to dismiss.'" Pugh v. McDonald, 266 F. Supp. 3d 864, 866 (M.D.N.C. 2017) (quoting James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996)). "Leave to amend, however, should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face."

Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986) (citing Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)).

Gaddy has no direct evidence of discrimination and therefore proceeds with her Title VII disparate treatment claim under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, to state a prima facie case of unlawful discrimination, a plaintiff must show that (1) she is a member of a protected class, (2) she performed satisfactorily at her job, (3) she suffered an adverse employment action, and (4) other similarly-situated employees who are not members of the protected class were treated more favorably. See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). In assessing those comparators, it is relevant whether they "dealt with the same supervisor, [were] subject to the same standards and[,] ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Cowgill v. First Data Techs., 41 F.4th 370, 381 (4th Cir. 2022) (alteration in original) (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (per curium)). While "a comparison between similar employees 'will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances,'" id. (quoting Cook v. CSX Transp.

15

Corp., 988 F.2d 507, 511 (4th Cir. 1993)), "the plaintiff must provide evidence that the proposed comparators are not just similar in some respects, but 'similarly-situated in all respects,'" Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

Gaddy easily satisfies the first three prongs of her prima facie claim under Title VII, and UNC Health does not argue otherwise. She is a black woman, a member of a protected class. See 42 U.S.C. § 2000e-2(a). Gaddy has alleged that she worked for UNC Health for fourteen years and that "[t]hroughout her tenure as an employee, [she] has consistently exceeded Defendant's expectations in her annual performance appraisals." (Doc. 1 ¶¶ 5, 7.) And she suffered an adverse employment action when her employment was terminated by UNC Health. See Giles v. Nat'l R.R. Passenger Corp., 59 F.4th 696, 704 (4th Cir. 2023) (citing Holland v. Wa. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). Concerning the fourth prong, Gaddy describes four similarly-situated employees in both her complaint and her amended complaint. In her original complaint, the positions and supervisors for these comparators were not provided. However, in her proposed amended complaint, she provided some of this missing information, and at least two of the comparators are alleged to be similarly situated to Gaddy.

16

The third comparator, a Human Resources Consultant, was reported by her co-workers for making racially-derogatory comments at work and was determined by UNC Health to have made such comments. (Doc. 12-1 ¶¶ 43-45.) This employee, a white female, was neither disciplined nor terminated. (Id. ¶ 47.) She is employed by UNC Health in a similar position as Gaddy; neither is in management, and both have positions involving working with others, where their professionalism and amiability may be relevant to their work performance. This employee also allegedly engaged in conduct similar to but more serious than Gaddy's by making offensive comments to co-workers. While it is not alleged that she shared the same supervisor, that is not always required. See Cowgill, 41 F.4th at 382.

The fourth comparator is also similarly situated to Gaddy. This employee, again a white female, worked in the Financial Navigation Department and reported to the same supervisor as Gaddy, Jennifer Headen. (Doc. 12-1 ¶ 48.) She allegedly made offensive comments at work, and these comments were reported to Headen, but the employee was neither disciplined nor terminated. (Id. ¶¶ 48-52.) Thus, this fourth comparator worked in a position similar to Gaddy's, reported to the same supervisor, and was not disciplined for her offensive comments made at work. This employee is also sufficiently similar to Gaddy to serve at this pleading stage as an example of similarly-situated employees who are not members of

17

the same protected class and were treated more favorably.

As these were UNC Health's principal challenges to Gaddy's amended complaint, the amended complaint as to her Title VII claim is not futile. The motion to dismiss will therefore be denied as moot and the motion to amend in this respect will be granted.

Gaddy's state claim for wrongful termination in her proposed amended complaint, however, does not fare as well. It is barred by sovereign immunity. UNC Health is a state agency, Singh, 659 F. Supp. 3d at 669-72, and is immune from suits seeking monetary damages pursuant to the Eleventh Amendment, Harter v. Vernon, 101 F.3d 334, 337 (4th Cir. 1996) (citing Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977)). North Carolina has not waived this immunity for wrongful termination claims. See Hooper v. North Carolina, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005). Therefore, Gaddy's motion to file an amended complaint will be denied in so far as it seeks to bring a wrongful termination claim against UNC Health.

### III. CONCLUSION

For the reasons stated,

IT IS ORDERED that Gaddy's motion for leave to file an amended complaint (Doc. 12) is GRANTED IN PART and DENIED IN PART. Gaddy is directed to file her proposed amended complaint in the form attached (Doc. 12-1) as to her Title VII claim forthwith but without her wrongful termination claim.

18

IT IS FURTHER ORDERED that UNC Health's motion to dismiss (Doc. 8) is DENIED as to the contention of insufficient service of the summons and complaint and otherwise DENIED AS MOOT.

                                            /s/   Thomas D. Schroeder
                                            United States District Judge

December 3, 2024